## Chicago Union Traction Company v. James E. O'Brien, by next friend.

### Gen. No. 11,577.

1. PASSENGER AND CARRIER—*when relation of, exists.* Held, from the particular evidence introduced in this case, that the relation of passenger and carrier existed between the plaintiff and the defendant.

2. DECLARATION—*when, sufficiently alleges that the plaintiff was a passenger.* It is not essential that the declaration should allege in terms that the plaintiff was a passenger; it is enough if facts are set up from which that conclusion may legally be drawn.

3. INSTRUCTIONS—*necessity of telling jury that they must pass upon the facts under the instructions of the court.* It is not necessary for the court to state in every instruction that the jury in passing upon the facts must be governed by the instructions of the court.

4. INSTRUCTION—*when, not ground for reversal.* An instruction, though subject to criticism, is not ground for reversal unless it appears that the excepting party probably was, or at least might have been, prejudiced by such instruction.

5. INSTRUCTION—*upon credibility of witness criticised.* An instruction as follows : " The court instructs the jury that the denunciation of witnesses by counsel, if any such was indulged in, should not influence the jury to disregard or disbelieve the testimony of any unim-

peached witness. Witnesses, like all other citizens are presumed by the law to be law-abiding citizens, and the law supplies a proper method of impeaching their evidence in cases where it can be impeached,"— though not reversible error in this case, held subject to criticism.

6. VERDICT—*when, not excessive.* A verdict for $10,000 is not excessive where it appears that at the date of his injury the plaintiff was about fourteen years old, before that time had perfect health, was crushed and rolled over under the guard which was around the wheels of the car, his right thigh bone broken, one consequence of which is that his right leg is three-quarters of an inch shorter than his left,' and where it further appears that the fracture was a comminuted one: that his left leg was also injured; that as a further consequence of the injury there is a bony growth about two' inches below the left knee which at the time of the trial was about the size of an egg and had been increasing in size; that an operation will be necessary to remove this growth, which may involve a serious loss of bone, impairing the strength and usefulness of the leg, and where other complications might result from such operation.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed November 28, 1904.

**Statement by the Court.** In the declaration it is averred in substance that June 27, 1901, appellant owned and operated a grip-car and certain street cars on West Madison street, in the city of Chicago, and was operating the same in a westerly direction between Carpenter and Curtis streets, in said city, and that the appellee, who was then about fifteen years of age, was "in the act of getting upon and alighting on said car, which was then and there receiving and discharging passengers, for the purpose of being carried as a passenger;" that the car was being slackened up for the purpose of receiving and discharging passengers, and that appellant knew, or by the exercise of reasonable care, could have known, that appellee was in the act of getting upon and alighting on said car; but appellant carelessly, negligently, recklessly, suddenly and violently started the car, with great speed, and violently jerked and caused the car to be propelled; by reason whereof appellee was violently thrown " from off the said car to the ground and under the car," and was greatly injured, etc.

The appellant pleaded the general issue. The jury found for the appellee and assessed his damages at the sum of $10,000, and judgment was rendered on the verdict.

JOHN A. ROSE and LOUIS BOISOT, for appellant; W. W. GURLEY, of counsel.

ALEXANDER SULLIVAN, for appellee; FRANK L. KRIETE, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

Counsel for appellant admit that the evidence as to the merits is conflicting, and confine their argument to objections to instructions given at appellee's request, and to the objection that the sum assessed as damages is excessive, thereby waiving the questions of appellee's care and appellant's negligence. Gordon v. Commissioners, etc., 169 Ill. 510; Keyes v. Kimmel, 186 Ill. 109; Inter-State Bldg. & Loan Assn. v. Ayers, 71 Ill. App. 520, 541.

The following are the instructions which appellant's counsel claim to be erroneous, in the order in which they are discussed in their argument:

8. "The jury are instructed that a common carrier is one who carries passengers for hire, and that a common carrier is bound by law to exercise the highest degree of care and caution consistent with the practical operation of his or its vehicle of transportation, for the safety of his or its passengers. In this case if you find from the evidence that the plaintiff became a passenger of the defendant and that the defendant, through its servants who were operating the train in question, did not exercise the highest degree of care and caution for the safety of the plaintiff as above stated, and if you also find that the plaintiff did exercise ordinary and reasonable care for his own safety and that he was injured, if the evidence satisfies you that he was injured, as alleged in his declaration herein, because of the failure of the defendant to exercise the highest degree of care and caution, as above stated, then you should find the defendant guilty."

7. "The court instructs the jury that the fact that the law does not make a common carrier an insurer of the safety of its passengers does not even to the slightest ex

tent relieve such common carrier of its legal duty to exercise the highest degree of care for the safety of its passengers, consistent with the practical operation of its vehicle. In this case if the jury find from the evidence, by a preponderance thereof, that the plaintiff became a passenger of the defendant and was injured because of the negligence of the defendant, while he was in the exercise of ordinary and reasonable care for his own safety. as alleged in his declaration, then you should find the defendant guilty."

It is objected that by each of instructions 9 and 7 the jury were instructed on the hypothesis that there was evidence tending to prove that appellee was a passenger on appellant's car at the time of the accident, and that there was no such evidence. The evidence is that about forty-five boys and girls went to Hartley's photograph gallery on the north side of Madison street to have their pictures taken in a group. Hartley's photograph gallery is about the middle of the block between Carpenter and Curtis streets, which streets run north and south. Curtis street is the next street west of Carpenter. After the picture was taken the boys came out of Hartley's. Some of them went west to the crossing of Curtis and Madison streets, and signalled the motorman of the car to stop, when the train, which consisted of a grip-car and two trailers, was opposite or nearly opposite Hartley's. The appellee, on coming out of Hartley's, stood between the sidewalk and the car track, and when the train came along ran forward, grabbed an iron bar in front of one of the posts of the grip-car, and attempted to get on the foot-board of the grip-car. The evidence tends strongly to prove that he stepped onto the foot-board, and that the car was moving very slowly at the time, some of the witnesses testifying that it came almost to a stop, and one of them, who was a passenger on the car, testified that a lady passenger alighted from the car just about the time that two or three of the boys who were with appellee got on the car.

Nathan Pollock, a passenger on the front seat of the grip-car, testified that, when the train was nearly to Hartley's gallery, there was a bell to stop, but the car did not stop,

but came to a slow down; that then several people got on the back part of the grip; that witness saw a crowd of young boys and girls, maybe fifteen or twenty, between Carpenter and Curtis streets, some on the sidewalk and some on the street, and that, as the train approached them, he spoke to the gripman and told him he had better be careful, that he was liable to hurt somebody, and that the gripman told him to go to hell and to mind his own business.

Edward Kane, another passenger, testified that a man sitting in front of him on the grip, said to the gripman, "Stop! don't you see those children getting on?" and that the gripman told him to mind his own business.

George Pratt, the gripman, testified as follows on cross-examination: "I don't know how many boys there were coming out of the gallery. There might have been a dozen; it looked to me as if there were about a dozen. They were small boys, about the size of this fellow who got hurt, school boys, some larger and some smaller. I thought they were going to take the car by the way they were running up toward the car. When I saw those boys coming out and thought they were about to get on my car, I slackened my speed. I did that before the accident. I did not get a signal from my conductor or anybody else. I was running about four miles an hour when I first saw these boys coming out of that photograph gallery. That is half speed of the rope. I do not know from personal knowledge what the speed of the rope is. As I saw the boys coming out I reduced the speed of the car trying to stop it, and I should judge it was going about two miles an hour when the boys tried to get on. I did that for the purpose of stopping the train to avoid an accident. I also did it for the purpose of permitting the boys to get on if they wanted to."

The foregoing evidence certainly tends to prove that the car slowed down opposite to Hartley's gallery, or nearly so, for the purpose of allowing passengers to alight from the train and others to board it, and that appellee got on the foot-board of one of the cars to be carried as a passen-

ger.   It is fair to assume that the conductor, under whose
direction the car was being operated, was on the lookout
and saw what the gripman saw.

In North Chicago St. R. R. Co. v. Williams, 140 Ill. 275,
the plaintiff, when the car was moving slowly, stepped on
the platform, in the presence of the conductor, and, before
he could take a seat in the car he came in collision with a
telegraph pole close to the track and was injured.   It was
objected that he had no right to be where he was; but the
court, commenting on the objection, said :   " It was a fair
question for the jury, whether, under all the circumstances,
the plaintiff was not invited to get on the car.   If he was
so invited, he was a passenger."   This case is much stronger
for appellee than was the case cited for the plaintiff, as to
invitation to get on the car.   In the case cited the court
also say :   " It is not necessary that there be an express
contract in order to constitute the relation of carrier and
passenger, nor that there should be a consummated con-
tract.   The contract may be implied from slight circum-
stances, and it need not be actually consummated by the
payment of fare, or entry into the car or boat of the car-
rier.   ' The whole matter seems to depend largely upon the
intention of the person at the time he enters the boat or
cars,' etc.   (Thompson on Carriers, pp. 42, 43.)   In Butler
v. Glen Falls & C. Ry. Co., 121 N. Y. 112, *supra*, it was
said :   ' It does not seem reasonable to assume, as a matter
of law, that a person, who, in an orderly way, attempts to
enter a street car as a passenger, is to be regarded as a tres-
passer until a special contract has been made with the con-
ductor, based upon the payment of the required fare.'   We
find no evidence in the case at bar to show that the plaint-
iff did not take the car ' for the purpose of being conveyed
thereupon as a passenger for hire,' according to the allega-
tion in his declaration."

Appellee testified :   " I got on the car to come home.   I
intended to pay my fare as a passenger.   I had the money
with me to pay it.   That was the proper way for me to go
home to my residence, on that car.   That car would take

me to Robey and Madison, and from there I would trans-
fer to Robey and go to Twelfth street. I live a little over
a block from Robey and Twelfth."

The gripman testified, as before stated, that he slowed
up to let the boys get on. The evidence not only tended to
prove that the appellee was a passenger on the car, but it
was such as to warrant the jury in finding that he was a
passenger.

It is further objected that it is not averred in the decla-
ration that appellee was a passenger, and therefore the
question whether he was a passenger was not in issue. It
is averred in the declaration that plaintiff was " in the act
of getting upon and alighting on said car," and that appel-
lant " well knew, or by reasonable diligence could have
known, that the plaintiff was in the act of getting upon and
alighting on said car," and that " the plaintiff was then and
there thrown, with great force and violence, from off the
said car upon the ground," etc.; also that the " car was then
and there slackened up, for the purpose of receiving and
discharging passengers." The substance of these averments
is, that appellee was impliedly invited to get on the train,
and was getting on it when the accident occurred. Facts
are averred from which the legal conclusion that appellee
was a passenger is deducible. We think the declaration
sufficient to admit evidence showing that appellee was a
passenger.

It is objected to instruction 7 that it assumes that defend-
ant was negligent, and that it permits the jury to find the
defendant guilty, if they find certain facts from the evi-
dence, without requiring them to find such facts under the
instructions of the court. Neither of these objections is
tenable. Instruction 7 concludes with the following sen-
tence: " In this case, if the jury find from the evidence, by
a preponderance thereof, that the plaintiff became a pas-
senger of the defendant, and was injured because of the
negligence of the defendant, while he was in the exercise of
reasonable and ordinary care for his own safety, as alleged
in the declaration, then you should find the defendant

guilty." Manifestly, the instruction submitted to the jury, as a question of fact, whether the defendant was guilty of negligence. The words, " if the jury find from the evidence, by a preponderance thereof," apply to the " negligence of the defendant" equally as to the words " that the plaintiff became a passenger of the defendant." It is not necessary for the court to state in every instruction that the jury, in passing on the facts, must be governed by the instructions of the court.

In the nineteenth instruction, given at appellant's request, the following occurs : " The court is the judge of what is proper and competent testimony and the court is also the judge of the law in this case. You should consider that only as law which has been given you by the court in the instructions. It is as much your duty to regard the law as given by the instructions of the court and decide this case in accordance therewith, as it is to consider the testimony in the case, and you should be governed as to the law in the case entirely by the instructions of the court."

In the twenty-fifth instruction, given at appellant's request, this occurs : " In considering and deciding this case, the jury should look solely to the evidence for the facts, and to the instructions of the court for the law of this case, and find their verdict accordingly." It is a settled rule that instructions to the jury are to be regarded as a connected series, constituting a single charge. Chicago City Ry. Co. v. Mead, 206 Ill. 174, 178; Chicago City Ry. Co. v. Bundy, 210 Ill. 39, 49. The rule is strictly logical. The jury when instructed by the court are not informed, and it would be improper to inform them, as to what instructions were requested by the plaintiff and what by the defendant. The instructions are read by the presiding judge, consecutively, and as altogether constituting a single charge. We think the jury, in the present case, were sufficiently informed that they should be guided by the instructions of the court in passing on the facts.

11. " The jury are instructed that it is not of itself in law an act of negligence for one intending to become a passenger on a street car to board the car while it is in mo-

tion. Whether or not it is an act of negligence to do so is a question of fact for the jury to determine; and in determining in this case whether or not the plaintiff boarded the defendant's car at the time and place in question, and, if he did, whether or not his so doing was negligence on his part, the jury should consider all the evidence and all the circumstances established by the evidence, and from these determine that issue. And if the jury find from the evidence, by a preponderance thereof, that the management, operation and speed of the said car at the time in question were such as to invite passengers and to make it seem reasonably safe for a person exercising ordinary and reasonable care for his own safety to board the defendant's car, and if you also find from the evidence that at that time the plaintiff intended to become a passenger on said car and exercised ordinary and reasonable care for his own safety, then he was not guilty of contributory negligence; and if you further find that the defendant did not exercise the highest degree of care consistent with the practical operation of its car, for the safety of the plaintiff, and that his injuries, if any, resulted from such failure of the defendant to exercise such degree of care, then you should find the defendant guilty."

This instruction is also claimed to be erroneous, first, because it assumes that the plaintiff was a passenger on the car; second, because it is misleading in stating that it is not, of itself, in law, an act of negligence for one intending to become a passenger on a street car, to board the car while it is in motion; and, third, that it is erroneous in stating that certain facts, if found by the jury, do not constitute negligence. The first reason we have sufficiently considered in passing on the objections to instructions 7 and 9. We do not think the jury could have been misled by the first sentence of the instruction, which states the law as we understand it. By the second sentence of the instruction the jury were plainly told that whether or not the so boarding a car was an act of negligence was a question of fact for them to determine from all the evidence. The court also submitted to the jury, by appellant's instruction 13, the question whether appellee was or not exercising ordinary care when he attempted to enter the car. The instruction is as follows:

13.  " The court instructs the jury that the plaintiff in attempting to enter the car in question was required by law to use ordinary care and caution to avoid injury to himself, and if the jury believe from the evidence that a person of ordinary prudence and caution, exercising ordinary care for his own safety, for one of his age, intelligence, capacity and experience, under such circumstances as attended the plaintiff's attempt to enter the car in question, as shown by the evidence, would not have attempted to enter such car while it was in motion, and if the jury further believe from the evidence that the plaintiff did attempt to enter the said car while it was in motion, and that he was injured in consequence of his attempting to enter said car while it was in motion, if he did so attempt to enter said car, then the jury should find the defendant not guilty."

The court also, by appellant's 13th and 29th instructions, submitted to the jury the question whether appellee exercised ordinary care, or was guilty of contributory negligence.  The third sentence of the instruction, while perhaps obnoxious to criticism, does not take from the jury the question of appellee's ordinary care, but, on the contrary, leaves that question to the jury.  Neither does it state that certain specified facts, if found by the jury, do not constitute negligence.  The instruction is that if the jury find from the evidence certain specified things, and, in addition, that the plaintiff " exercised ordinary and reasonable care for his own safety, then he was not guilty of contributory negligence."  We have examined the cases cited by appellant's counsel in support of the last objection, and do not find that any instruction held erroneous in any of them was at all similar to instruction 11.

6.  " The court instructs the jury that the denunciation of witnesses by counsel, if any such was indulged in, should not influence the jury to disregard or disbelieve the testimony of any unimpeached witness.  Witnesses, like all other citizens, are presumed by the law to be law-abiding citizens, and the law supplies a proper method of impeaching their evidence in cases where it can be impeached."

Two objections are made to this instruction:  First, it instructs the jury to disregard the denunciation of a witness, even though it may be warranted by the evidence;

Chicago Union Traction Co. v. O'Brien.

and second, it is erroneous in telling the jury that there is a proper method of impeaching a witness, without informing them what that method is; and also in stating that witnesses are presumed by the law to be law-abiding citizens. To warrant reversal of a judgment because of an erroneous instruction, it must appear that the excepting party probably was, or, at least, might have been, prejudiced by the instruction. It does not appear from the record before us, that appellant's attorney, in the trial court, denounced any witness, or even that he made any argument to the jury. If appellant's attorney did not denounce any witness, appellant could not have been prejudiced by the first part of the instruction.

In N. C. St. R. R. Co. v. Wellner, 206 Ill. 272, a somewhat similar instruction, in regard to statements made by counsel, was objected to, of which the court say: "Further, it does not appear from the record that counsel for appellant made any argument to the jury, and unless that fact appeared we could not hold that the instruction was harmful, however erroneous it was in the respect complained of."

On the hypothesis, which is not supported by the record, that some of the attorneys engaged in the trial denounced a witness, or witnesses, the jury were sufficiently admonished in regard to such denunciation by the following instruction, given at appellant's request: "The jury are instructed that in considering this case and arriving at their verdict they should not take into account or be influenced by any statement, declaration, denunciation or insinuation of counsel, if any such has been made, unless the same is based upon, or is justly deducible from, the evidence." * * *

It is certainly true that a witness is presumed by law to be a law-abiding citizen, in the absence of evidence to the contrary, nevertheless we do not approve of the statement in the latter part of the instruction. It is the province of the jury to pass on the credibility of witnesses, and we think they should be permitted to do so without suggestion from the court, except, perhaps, in the form of

an instruction calling their attention, generally, to elements which they might consider in passing on the credibility of a witness.    However, as the instruction applies to all witnesses, both appellee's and appellant's, we do not think appellant could have been prejudiced by the instruction.

It is claimed that the sum assessed as damages is so large as to evince that it is the result of passion and prejudice on the part of the jury.    In Graham & Waterman on New Trials, vol. 3, p. 1127, the author says:  "Excessive damages is good cause for granting a new trial, and the discretion of courts may be properly exercised, in this respect, in two cases: one where the law recognizes some fixed rules and principles in measuring the damages, whence it may be known that there is error in the verdict, as in actions on contracts or for torts done to property, the value of which may be ascertained by evidence; the other includes suits for personal injuries, where, although there is no fixed criterion for assessing the damages, yet the court must conclude, from the exorbitancy of them, that the jury acted from passion, partiality or corruption."

In N. C. St. R. R. Co. v. Eldridge, 51 Ill. App. 430, 432, the court say :  " It is well settled, both in this court and the Supreme Court, that judgments in cases of this character will not be disturbed on the ground that the damages are excessive, unless it is manifest that the verdict is against the evidence, and is attributable to passion or prejudice on the part of the jury."    No impropriety of court, counsel or jury is claimed to have occurred on the trial of the cause.    In other words, it is impliedly conceded that the trial was fair and impartial.    At the date of the injury appellee was about fourteen years old, and before that date had perfect health.    He was crushed and rolled over under the guard that was around the wheels of the car, and the car had to be raised before he could be removed.    His right thighbone was broken, one consequence of which is that his right leg is three-quarters of an inch shorter than his left.    The fracture was a comminuted one.    His left leg was also injured, and at the time of the trial there

was a tissue scar on it extending from the knee to the ankle; also, as a consequence of the injury, there is a bony growth about two inches below the left knee which, at the time of the trial, was about the size of an egg, and had been increasing in size. The evidence tends to prove that an operation will be necessary to remove this bony growth, and that the operation may involve a serious loss of bone, impairing the strength and usefulness of the leg. One of the surgeons testified: "There is a possibility of a bony tumor developing there to a considerable size; or tuberculosis of the bone, or consumption of the bone—usually we say tuberculosis of the bone, which, in common language, means consumption of the bone—will result. If that continues to grow and develop, he can be operated on, but, I believe, with detrimental results." The same witness testified: "I made an examination as to his nervousness. I find the boy is very nervous, was very nervous at that time, in September last, when I examined him the first time, and from the shock which he evidently sustained from the injury, I find that he still continues nervous; very much so. In my judgment the growth on the left leg will increase in size." The evidence tends to prove that appellee's earning capacity is decreased, and that his injuries, or the direct consequences of them, are permanent. We cannot say, in this state of the evidence, that the jury were influenced by passion or prejudice, and must decline to substitute our judgment for that of the jury.

The judgment will be affirmed.

*Affirmed.*